**FILED**

OCT 2 2 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| William Boykin | ) | |
| Lamont Caldwell | ) | Civil Action No. _____ |
| Paul Cole | ) | |
| Thomas Griffin | ) | |
| Gerald Holmes | ) | |
| Chuck Perry | ) | |
| Joseph Proctor | ) | |
| William Proctor | ) | |
| Albert Selby | ) | |
| | ) | |
| Homeless persons living on | ) | |
| the streets of the District of Columbia | ) | |
| | ) | |
| | ) | |
| PLAINTIFFS | ) | Case. 1.10-cv-01790 |
| vs. | ) | Assigned To  Friedman, Paul L. |
| | ) | Assign. Date : 10/22/2010 |
| Adrian Fenty, | ) | Description: TRO/PI |
| in his Individual and Official Capacities | ) | |
| 1350 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20004 | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |

### COMPLAINT

### JURISDICTION

1. Plaintiffs bring this action pursuant to *The Americans With Disabilities Act*, 42 U.S.C. §§

12101 *et seq.*, 12131, and 12132 ("ADA"), *The Fair Housing Act,* 42 U.S.C. §§ 3601-

3631 and 3604(f)(1)("FHA")  and the *District of Columbia Human Rights Act*, D.C.


**RECEIVED**

OCT 2 1 2010

Clerk, U.S. District & Bankruptcy
the Dist...

Official Code §§ 2-1401.01 *et seq.* and 2-1402.21(a)(4) (place of residence discrimination) ("DCHRA"). This Court has original jurisdiction over all federal statutory claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the claims arising under the laws of the District of Columbia.

## THE PARTIES

2.  Plaintiff, William Boykin, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

3.  Plaintiff, Lamont Caldwell, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

4.  Plaintiff, Paul Cole, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Plaintiff, Lamont Caldwell, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

5.  Plaintiff, Thomas Griffin, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

6.  Plaintiff, Gerald Holmes, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

7.  Plaintiff, Chuck Perry, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

8.  Plaintiff, Joseph Proctor, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

9.  Plaintiff, William Proctor, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

10. Plaintiff, Albert Selby, is a natural person and former inhabitant of La Casa Shelter, 1436 Irving Street, NW, Washington, DC, 20010.

11.  Defendant Adrian Fenty is Mayor of the District of Columbia.


VENUE

13.  All parties either reside or work in the District of Columbia, and all complained of

events took place in the District of Columbia. La Casa Shelter is located in the District of

Columbia. Venue in therefore proper. 28 U.S.C. § 1391 *et seq.*

ALLEGATIONS

14.  The District of Columbia owns the property located at 1436 Irving Street, NW .

Washington D.C. known as the La Casa Shelter. The Coalition for the Homeless operated

La Casa Shelter during the relevant time period and provided services to the homeless

described herein.  A 2006 report identified that approximately 80% of the homeless

population in the District of Columbia consists of African Americans.  Pl. Ex. 1, Excerpt,

*Draft Consolidated Plan FY 2006 Action Plan –District of Columbia* at 79.

15.  Upon information and belief, the overwhelming majority of residents at La Casa were

African American and Hispanic.  See Pl.  Ex. 2, pages 1-3, photographs of La Casa

residents waiting in an alley in Columbia Heights for shelter entry (2009) (Illustrating the

declining conditions endured by minorities of Ward 1 prior to the shelter's closing).

16.  Plaintiffs resided at the former La Casa Shelter located at 1436 Irving Street in Northwest

Washington, D.C.  La Casa Shelter was a low barrier shelter which served thousands of

men over at least the past decade.

17.  Numerous residents suffered from various disabilities including chemical dependency,

mental illnesses including but not limited to depression and schizophrenia.  The

3

worsening conditions and ultimate closure of this last remaining public shelter in Ward 1, in combination with the lack of public shelters in Wards 2, 3, and 4, have forced former La Casa residents to live on the streets, estranged from vital services and adequate shelter, or be displaced from their community by being forced instead to seek shelter in the far flung parts of the city in Anacostia, where the city is now bussing them.   This illustrates the systematic displacement of the predominantly minority homeless from the Wards of the District which contain the most affluent, white populations to the poorest Wards in D.C.  According to a Greater DC Cares Fact Sheet "Homeless families in D.C. are typically headed by a single woman from Ward 7 or 8."  See Pl. Ex. 3, Greater D.C. Cares Fact Sheet, *Homelessness in DC* (2008) at 1.

18. Former residents are reportedly bussed to and sleeping on the floors of the Anacostia Shelter (801 East Building, 2700 Martin Luther King Ave. SE) (hereinafter "801 East").

19. The rate of homelessness continues to rise in the District, attributed to an ever increasing lack of affordable housing in the District, including high rents and mortgages, a rise in physical and psychological abuses suffered by the homeless, stagnant wages and slashed public assistance, lack of adequate mental health facilities and the lack of adequate day care facilities.

20. The Washington Legal Clinic for the Homeless (WLCH) reports that approximately 16,000 people are homeless in Washington DC over the course of a year, one of highest rates in the country.  Pl. Ex. 4, *WLCH, Homelessness and Poverty, Washington, DC* (2009) at 1-2 (hereinafter "*WLCH report*").

21. The WLCH also reports that, for most applicants, the wait for emergency family shelter is approximately six months and there is in excess of four hundred families on the wait list for emergency shelter, with numbers increasing daily.  Fifteen percent of respondents in an April 2009 surveyed said they were forced to sleep on the streets due to shelters being full, and 40% refused to enter shelters due to overcrowding.  On average, homeless individuals were turned away from emergency shelter 25 times each night.

22. According to the WLCH report, as of October 2009, at least 15,411 households remained on the wait list for DC Housing Authority's Public Housing and 26,704 households on the wait list for Housing Choice Voucher Program, 13,000 of whom are homeless.

23. The number of public housing units in the District has decreased by 4000 units since 2000, and will continue to decrease, with at least 68% of all project based subsidized units set to expire by 2023.  *WLCH report* at 3-4.

24. Prior to closing La Casa, the Urban Institute reported that at least 13,000 single adults and 2,800 adults and children use emergency shelter in the District every year, and that the shelters were in excess of capacity on a regular basis: 164% over capacity at New York Ave., 125% over capacity at Franklin Shelter, 111% over capacity at 801 East. This report illustrated the regular overcapacity of shelters prior to closing of downtown Franklin Shelter and La Casa.Shelters.  Pl. Ex. 7, *Major Recommendations: Summary Report of the Urban Institute's Assessment of the District of Columbia's Public Homeless Assistance System*, June 2, 2008 at page 2 (hereinafter "*Urban Institute report*")

25. On January 27 of this year, 6,539 literally homeless persons were counted in the District in the most recent Point in Time study performed by the Department of Housing and Urban Development (HUD).  This is an increase in 5% from the Point in Time 2009

26. The Permanent Supportive Housing (PSH) program was instituted in the District in 2008, and reportedly housed a thousand homeless people as of July of this year. The program seeks to remove the chronically homeless from dependence upon shelters, placing them in housing while providing supportive services to develop or restore self reliance, and has been used as an excuse for closing the shelters in the predominantly white parts of the city.

27. There has been no transparency of the PSH program since its inception as to the economic viability of the program in successfully addressing the homeless problem, with regard to the attrition rates of placements, the adequate provision of accompanying supportive services, or the location of those services in relation to housing locations.

28. Former long time residents of La Casa are reportedly being housed in what seems to be a haphazard fashion in PSH units in far flung parts of the city, with little or no indication that a proper assessment of the need for supportive services is being appropriately provided to ensure the will men will in fact be able to remain in that housing.

29. The current situation now exposes former La Casa residents to great risk of harm, especially those with mental or physical disabilities. Former residents are relegated to now seek shelter in overcrowded conditions and in the most distant and poorest parts of the city. They now face long lines to enter existing shelters, overcrowded conditions, increased incidences of violence due to overcrowding, unreliable transportation, lack of access to life saving services, and great difficulty in maintaining or seeking employment in the downtown area or other areas of opportunities which are far removed from Wards 7 and 8.

30. Former La Casa residents are isolated in the poorest wards of the city, far removed from soup kitchens and food programs available in downtown DC, and now lack access to adequate meals.

31. Former La Casa and Ward 1 residents, some of which have been provided housing, and some of which have been forced to seek shelter in parts of the city that lack adequate facilities to provide for their physical and mental health needs, are now placed in greater risk of physical danger, and now face large impediments in their ability to seek and maintain employment.

32. Former residents of La Casa Shelter include those with compromised physical and mental capacities, and are now living on the streets of the Ward 1 area, or bussed to the poorest parts of the city, without access to life saving medicines, without access to case worker contact and supervision.

33. The Inter-Agency Council on Homelessness (ICH) held its bi-monthly meeting on February 25, 2009, where Fred Swan reported that over 3,100 homeless singles and over 360 homeless families had completed assessment forms in efforts to obtain Permanent Supportive Housing, but only 414 singles and 1 family have been housed. (ICH Feb. 25, 2009 minutes).

34. Most PSH placements have occurred in the poorest and most violent parts of town, and with the least services available for the vulnerable and the homeless.

35. In a June 2, 2008 study commissioned by the District Government, the reviewers found that almost every District-owned emergency shelter has serious deficiencies, including but not limited to gaping holes, cracked ceilings, leaky pipes, unusable toilets and soiled beds. *The Community Partnership and the District of Columbia's Public Homeless*

.

*Assistance System*, June 2, 2008 at 9.

http://www.urban.org/UploadedPDF/411694_community_partnership.pdf

36. Currently designated warming centers are as many as five miles away from the downtown area, and lack reasonable access to job opportunities, balanced meals, and much needed physical and mental health services.

37. Plaintiffs seek temporary and permanent injunctive relief compelling the District Government to stop the closure of the La Casa Shelter and return the *status quo*, providing adequate facilities in good condition to serve persons who are homeless in Ward 1, with reasonable access to much needed mental health, health care services, adequate staffing of case workers and counselors for addictions and other disabilities, as well as employment counseling.

## COUNT I
### (Violation of Fair Housing Act Disparate Treatment - Race)

38. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

39. Plaintiffs are a protected class under the FHA, African American or Hispanic men, while others suffered harm as a result of the discriminatory actions of defendants.

40. Defendants were/are housing providers as defined under the FHA.

41. Defendants intentionally denied plaintiffs housing because of plaintiffs' race.

42. Defendants are without justification for the complained of acts.

43. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

## COUNT II
### (Violation of Fair Housing Act Disparate Treatment--Disability)

44. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

45. Plaintiffs are a protected class under the FHA, mentally disabled, physically disabled and suffering from substance abuse. Others have suffered harm as a result of the discriminatory actions of defendants.

46. Defendants were/are housing providers as defined under the FHA.

47. Defendants intentionally denied plaintiffs housing because of plaintiffs' disability.

48. Defendants are without justification for the complained of acts.

49. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

## COUNT III
### (Violation of Fair Housing Act Disparate Impact--Race)

50. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

51. Plaintiffs are a protected class under the FHA, African American and Hispanic men, while others suffered harm as a result of the discriminatory actions of defendants.

52. Defendants were/are housing providers as defined under the FHA.

53. Defendants actions had a disproportionate impact on African Americans or Hispanics.

54. Defendants are without justification and less discriminatory means were available to achieve any purported interest.

55. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate and consistent with Count I of this complaint.

## COUNT IV

**(Violation of Fair Housing Act Disparate Impact - Disability)**

56. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

57. Plaintiffs are a protected class under the FHA, mentally disabled, physically disabled and suffering from substance abuse. Others have suffered harm as a result of the discriminatory actions of defendants.

58. Defendants were/are housing providers as defined under the FHA.

59. Defendants actions had a disproportionate impact on African Americans and Hispanics.

60. Defendants are without justification for these actions, and less discriminatory means were available to achieve any purported interest.

61. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate and consistent with Count II of this complaint.

## COUNT V
### (Violation of Americans With Disabilities Act Disparate Treatment)

62. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

63. Plaintiffs are a protected class under the ADA, mentally disabled, physically disabled and suffering from substance abuse. Others have suffered harm as a result of the discriminatory actions of defendants.

64. Defendants are a governmental entity as defined under the ADA, and subject to it s requirements.

65. Defendants owned the property located at 1426 Irving  Street, N.W. Washington, D.C. known as La Casa Shelter. Services for disabled homeless were provided at and around La Casa Shelter.

66. By closing La Casa, defendants intentionally and directly and proximately denied plaintiffs needed services because of their disability.

67. Defendants are without justification for the complained of acts.

68. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

**COUNT VI**
**(Violation of Americans With Disabilities Act Disparate Treatment)**

69. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

70. Plaintiffs are a protected class under the ADA, mentally disabled, physically disabled and suffering from substance abuse. Others have suffered harm as a result of the discriminatory actions of defendants.

71. Defendants are a governmental entity as defined under the ADA, and subject to it s requirements.

72. Defendants owned the property located at 1436 Irving Street, N.W. Washington, D.C. known as La Casa Shelter. Services for disabled homeless were provided at La Casa Shelter.

73. By closing La Casa Shelter, defendants intentionally and directly and proximately denied plaintiffs needed services because of their disability.

74. Defendants' actions had a disproportionate impact on the disabled.

75. Defendants are without justification these actions, and less discriminatory means were available to achieve any purported interest.

76. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate consistent with Count V of the complaint.

### COUNT VII
### (Violation of D.C. Human Rights Act,  Place of Residence Discrimination, Disparate Treatment)

77. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

78. Plaintiffs are/were residence of Northwest Washington, D.C. for the relevant time period.

79. Defendants did intentionally discriminate against plaintiffs by closing La Casa Shelter.

80. Other similarly situated shelters in remote areas of Wards 7 and 8 were treated differently by defendants.

81. Defendants did so without justification.

82. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

### COUNT VIII
### (Violation of D.C. Human Rights Act, Place of Residence Discrimination, Disparate Impact)

83. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

84. Plaintiffs are/were residents of Northwest Washington D.C. for the relevant time period.

85. Defendants' actions had a disproportionate impact on the residents of Northwest Washington, D.C.

86. Defendants are without justification these actions, and less discriminatory means were available to achieve any purported interest.

87. Plaintiffs therefore seek compensatory and punitive damages in the amount of $10,000,000.00, declaratory judgment, and such other relief deemed appropriate consistent with Count V of the complaint.

**COUNT IX**
**(Violation of D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq*.,**
**Disparate Treatment)**

88. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

89. Defendants did intentionally discriminate against plaintiffs by closing La Casa Shelter and abruptly removing vital and other services.

90. Plaintiffs are individuals with disabilities as defined in D.C. Code § 2-1401.02(5A) and are entitled to all of the protections, rights and remedies of Title § 2-1401.01 *et seq*. of the Code of the District of Columbia (the *Human Rights Act*).

91. At all times relevant thereto, defendants violated the Plaintiffs' rights under the Human Rights Act by refusing to accommodate their needs and requests for adequate shelter from the rain, snow, ice and cold, as well as for accessible mental health and health care services, adequate nutrition, and employment opportunity availability.

92. Defendants' actions constitute violations of D.C. Code § 2-1401.01 *et seq*.

93. As a direct result of the discriminatory acts of Defendants, Plaintiffs have suffered the damages described herein.

94. Defendants did so without justification.

95. Plaintiffs therefore seek compensatory and punitive damages in the amount of
$10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

## COUNT X
**(Violation of D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, Disparate Impact)**

96. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully
set forth herein.

97. Defendants' actions had a disproportionate impact on the former inhabitants of La Casa
Shelter, by displacing them from much needed vital services, adequate nutrition, and
employment opportunities.

98. Plaintiffs are individuals with disabilities as defined in D.C. Code § 2-1401.02(5A) and
are entitled to all of the protections, rights and remedies of Title § 2-1401.01 *et seq.* of the
Code of the District of Columbia (the *Human Rights Act*).

99. At all times relevant thereto, defendants violated the Plaintiffs' rights under the Human
Rights Act by refusing to accommodate their needs and requests for adequate shelter
from the rain, snow, ice and cold, as well as for accessible mental health and health care
services, adequate nutrition, and employment opportunity availability.

100.        Defendants' actions constitute violations of D.C. Code § 2-1401.01 *et seq.*

101.        As a direct result of the discriminatory acts of Defendants, Plaintiffs have suffered
the damages described herein.

102.        Defendants did so without justification.

103.        Plaintiffs therefore seek compensatory and punitive damages in the amount of
$10,000.000.00, declaratory judgment, and such other relief deemed appropriate.

Plaintiff's hereby demand a trial by jury for all claims so triable. Plaintiffs further demand all such relief available, but specifically demanded.

October 21, 2010

JANE ZARA, ESQ.
DC Bar # 982392
1611 Monroe St., NW
Washington, DC  20010
202-483-9303
jjzara@aol.com
*Counsel for Plaintiffs*